UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

REBECCA A. HONN

v.                                                      CAUSE NO.: 1:24-CV-259-HAB

INDIANA DEPARTMENT OF CHILD
SERVICES

## OPINION AND ORDER

Former state employee, Rebecca A. Honn ("Honn"), is suing the Indiana Department of Child Services ("DCS") for retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e) and discrimination under the Age Discrimination and Employment Act, (29 U.S.C. § 621 *et seq.*). (Compl., ECF No. 1). DCS moves to dismiss these claims. The parties have fully briefed the motion. (ECF Nos. 9, 16, and 17). Because the Court agrees that the Complaint fails to state a claim for relief, DCS' motion to dismiss will be GRANTED with leave for Plaintiff to amend as set forth in this Order, if she so chooses.

## DISCUSSION

### 1. Well-Pleaded Factual Allegations[1]

Honn began working for DCS in the early 2000s as a Case Manager. From that time on, Honn was sporadically employed by DCS until January 2009. After January 2009, Honn was continuously employed by DCS until her termination in October 2023. (Compl. ¶¶s 13-15). Throughout this time, Honn had no disciplinary issues, received positive employment reviews, and received bonuses.

---

[1] Defendant moves under Fed. R. Civ. P. 12(b)(6), so the Court accepts the well-pleaded factual allegations in Plaintiff's Complaint as true.

In February 2015, Honn began working as a Residential Licensing Specialist ("RLS") for DCS under the supervision of Crystal Byrne ("Byrne"). As an RLS, Honn worked with residential facilities in Indiana that received per diems and financial assistance from the state. Part of her job responsibilities included auditing residential facilities for compliance with state law, contract, and DCS policies. (*Id.* ¶ 17).

In March 2023, Honn sought advance permission by DCS supervisors Blake Hudson ("Hudson") and Ashlee Prewitt ("Prewitt"), to travel to Omaha as soon as Honn received notice of her daughter going into labor. Honn's daughter was scheduled to deliver her child in August 2023, and Honn believed she had received permission to perform work remotely in Omaha while assisting her daughter.

On July 11, 2023, Byrne contacted Honn via Microsoft Teams for a meeting with other DCS staff members regarding a residential facility by the name of Pierceton Woods Academy ("Pierceton Woods"). (Compl. ¶26). Pierceton Woods is a residential treatment program offering placement for youth males with substance abuse issues or sexually maladaptive behaviors. (*Id.* ¶ 28; *https://piercetonwoods.org.*). Since 2017, DCS has received 27 reports alleging sexual abuse or inappropriate behavior by staff at Pierceton Woods. (*Id.* ¶27).

During the Teams meeting, Honn was asked questions about her audits of that facility that had taken place in previous years. Three DCS attorneys were involved in the call along with other staff members. Honn had not been scheduled to be in the meeting and was called "out of the blue." (Compl. ¶¶30-31). Honn, who felt blindsided and unprepared, answered questions about incidents in 2019 and 2020 as well as her reviews and audits of Pierceton Woods during this time frame. Honn believed that she was being subjected to scrutiny for the issues and problems related to Pierceton Woods. (*Id.* ¶35).

On July 19, 2023, Honn was instructed to clear her calendar because questions and issues with reviews of the Pierceton Woods program were a priority. Honn had a previously scheduled urgent dentist appointment that day and had to reschedule the appointment.

On July 21 and 22, 2023, Honn was "subjected to constant harassment, berated, and accused of issues regarding the Pierceton Woods situation in which questions came at almost all hours of the day into the night, and beyond what would be considered a reasonable work period."

On July 22, 2023, Honn filed a hostile work environment complaint with the Indiana State Personnel Department ("ISPD") asserting that Byrne was contacting her at all hours of the day and pressuring her, overscrutinizing her, contacting her in the middle of the night, increasing her workload, and causing Honn stress. Honn also reported that the DCS policy regarding Emergency Shelter Care was not being followed.

On July 24, 2023, Honn spent the day answering questions related to Pierceton Woods posed to her by Byrne, again causing her to adjust her schedule and set aside other work and obligations.

On August 7, 2023, Honn received an email from Prewitt asking Honn if she had received permission from the ISPD to go to Omaha and work remotely. Honn responded that Hudson and Prewitt both gave verbal and written permission in March 2023. The following day, ISPD told Honn it was up to DCS human resources to make the decision for her to go to Omaha and work remotely. Honn then made the request to DCS human resources and was told that the program manager makes the decision. Honn reported this information to Hudson and Prewitt. On August 11, 2023, Hudson notified Honn that DCS human resources did not approve the request to work out of state. (Compl. ¶¶42-46). Despite the previously obtained consent, Honn was told that only

3

remote work from adjoining states would be approved. Hudson also advised Honn that she needed to take a break. (*Id.* ¶47).

Honn took vacation time from August 12 through August 21, 2023, to go to Omaha. Honn's granddaughter was born on August 17, 2023. Upon her return from vacation, Honn completed an annual audit for Pierceton Woods. Honn conducted the audit on site and was the only DCS employee present. Pierceton Woods was under significant scrutiny, as a result of the number of allegations against it for sexual abuse of residents at the facility.

Hudson approved Honn's audit report on September 13, 2023. However, Byrne insisted on re-writing the report. Even though she did not perform or attend the audit, she made significant changes to the report, removed factual statements, and made the report more critical of Pierceton Woods. Honn was hesitant to sign the report after Byrne made the changes because the findings in the report were not reflective of the observations made during the audit. Byrne told Honn she did not need to sign the report.

On October 12, 2023, Byrne called Honn to discuss the changes she had made to the Pierceton Woods audit. DCS Supervisor Rick Steigerwalt ("Steigerwalt") was on the call as well.[2] On that call, Byrne directed Honn to read the report's changes and sign the report. After the call concluded, Honn called Steigerwalt and explained that she had previously been given permission from Honn not to sign the report. Steigerwalt directed Honn to email Byrne and remind her of the conversation.

On October 16, 2023, Honn received an email from Byrne scheduling a meeting for that same afternoon. At the meeting, Honn was adamant that she was uncomfortable signing the audit report. (Compl. ¶58). Honn believed that the report had been manipulated because of the amount

---

[2] Prewitt and Hudson were also listening on the call but did not listen to the entire call as they had another meeting to attend.

of public scrutiny Pierceton Woods was facing. (*Id*. at ¶¶s 59, 60). Later that day, however, Honn signed the audit report and sent it to Byrne, Hudson, and Prewitt. The report was then forwarded to Pierceton Woods.

The next day, DCS altered Honn's residential duties and her ability to process emergency shelter care for youth. No explanation was given for these changes, even after Honn inquired about it to supervisors. (Compl. ¶¶s 67, 68).

On October 20, 2023, Honn filed a report of concerns with DCS Human Resources, the State Personnel Department Ethics Commission, and called the Trust line – an anonymous reporting line. Despite her attempts to report her concerns, Honn received no acknowledgment or response from the agencies.

On October 24, 2023, Honn participated in a meeting to discuss her performance and behavior. Honn was terminated at this meeting and was ordered to remove her personal items and leave the office. Honn was given a settlement agreement from DCS Human Resources and told she had three days to sign it.

On November 9, 2023, Honn appealed her termination and her termination was reviewed by Deputy Director of Child Welfare Services David Reed ("Reed"). Reed indicated he had reviewed the file and agreed with the termination. Honn then filed an appeal of that decision.

While her appeal was pending, DCS offered Honn a severance package in an attempt to resolve her employment. Honn was given a short period of time to respond to the severance offer. At the time the Complaint was filed, Honn's appeal remained pending with the State Employees Appeals Commission. *In re Rebecca Honn v. Indiana Department of Child Services,* SEAC No. 12-23-092.

Honn filed a Charge of Discrimination with the Indiana Civil Rights Commission. (Charge, Compl. Ex. A).[3] In her Charge she relates many of the same facts that are in her Complaint and asserts discrimination based on retaliation. The Charge makes no mention of age discrimination and specifically lists "retaliation" as the basis of the discrimination. The concluding paragraph of the Charge alleges:

> I was retaliated against because Ms Burns wanted me to change and falsify answers to an evaluation on Pearson Woods Academy. But I refused. I was retaliated against because Ms. Burns wanted me to extend youth to stay at juvenile facilities from 20 days to 6 months, without the facilities not having to complete a 20-day evaluation. I believe I have been subjected to discrimination and was retaliated against in violation of Title VII of the Civil Rights Act of 1964.

(Charge, p. 2). The EEOC issued Plaintiff a Notice of Right to Sue on March 29, 2024, and the Complaint in this case timely followed asserting claims for violations of Title VII and the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §621, et seq.

1. ***Legal Standard***

Defendant has moved to dismiss this case under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff

---

[3] The Charge attached to the Complaint is unsworn, unsigned, and undated so the Court has no information when Plaintiff filed her Charge. Likewise, the Complaint's factual allegations are silent on when she filed the Charge.

6

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

   2. *Analysis*

DCS moves to dismiss the Complaint arguing that Plaintiff's ADEA claim must be dismissed because DCS is an arm of the state of Indiana and protected by Eleventh Amendment immunity. Alternatively, Plaintiff asserts that the ADEA claim should be dismissed because Plaintiff did not include an age discrimination claim in her Charge and has not otherwise stated a claim for age discrimination in her Complaint. As for the Plaintiff's retaliation claim, DCS argues that the allegations do not state a cause of action for retaliation under Title VII because neither the conduct in the Charge or the allegations of the Complaint suggest that any retaliation was because of a statutorily recognized protected characteristic. The Court now turns to each of these arguments.

   a. **Claims under the ADEA**

The Eleventh Amendment grants states immunity from private suits in federal court without their consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *McDonough Associates, Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013). An agency of the state receives this same immunity. *Alabama v. Pugh*, 438 U.S. 781, 781-82(1978) (per curiam); *Kroll v. Board of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991). It is undisputed that DCS is an Indiana state agency entitled to Eleventh Amendment immunity.

Three exceptions to Eleventh Amendment immunity exist. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). First, a state may waive immunity by consenting to suit in federal court; second, Congress may abrogate the state's immunity through a valid exercise of its powers; third, a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing

violations of federal law under the *Ex parte Young* doctrine. *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

DCS argues that Eleventh Amendment immunity bars Honn's ADEA claim since it is brought against an agency of Indiana state government, the State has not waived immunity and Congress has not abrogated its immunity. Honn, in turn, focuses on whether the *Ex parte Young* doctrine, which allows a plaintiff who is seeking prospective equitable relief to sue state officials for an ongoing violation of federal law, applies in this case. Honn seemingly acknowledges that as pleaded, her claim is barred by Eleventh Amendment immunity. But Honn argues that "plaintiff should be granted relief and leave to amend her complaint for declaratory and injunctive relief to prevent the discriminatory policies of the Department of Child Services." (ECF No. 16, at 4). The Court agrees with the parties that Plaintiff's complaint presently fails to state a claim for relief against DCS under the ADEA.

In *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), the Supreme Court addressed a state's immunity from liability for ADEA claims and held that, while Congress intended for the ADEA to apply to states and their agencies, this was not a proper abrogation of a state's immunity from liability under Section 5 of the Fourteenth Amendment. *Id.* at 73. This holding applies regardless of the relief sought by Honn. *Seminole Tribe of Fla. V. Fla.*, 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."); *Peirick v. Ind. Univ.-Purdue Univ. Indpls. Athletics Dept.*, 510 F.3d 681, 694, 696 (7th Cir. 2007) (holding "that the Eleventh Amendment shields [the Trustees of Indiana University] from suit under the ADEA" and that a plaintiff "may not proceed against the Board even on her claims for prospective injunctive relief");

*Jones v. Indiana Fam. & Soc. Servs. Admin.*, 2023 WL 11960562, at *4 (S.D. Ind. Mar. 17, 2023) (dismissing ADA and ADEA claims because Plaintiff sued Indiana Family and Social Services but did not bring suit against any state official). Accordingly, where, as here, a plaintiff has sued only a state agency, the Eleventh Amendment bars suit regardless of whether the suit seeks monetary or equitable relief. *See Puerto Rico Aqueduct & Sewer Auth.v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[t]he doctrine of *Ex parte Young* ... has no application in suits against the States and their agencies, which are barred regardless of the relief sought"); *Wasserman v. Purdue Univ.*, 431 F. Supp. 2d 911, 916 (N.D. Ind. 2006) ("[T]he Board of Trustees [of Purdue University] is a political arm of the state which is immune to suit. [Plaintiff] did not name the individual members of the Board of Trustees, in their official or individual capacities. Because Purdue has not waived that immunity, the Eleventh Amendment precludes this court from exercising jurisdiction."). Thus, as pled, Honn does not state a claim for relief under the ADEA against DCS.

Honn argues that she should be given leave to amend her complaint to properly assert an ADEA claim for prospective relief. The problem with this request is that even if she amended her complaint, she has not exhausted her administrative remedies with regard to any allegation of discrimination under the ADEA. Her EEOC charge is silent as to any allegations that pertain to her age and "[g]enerally, 'the scope of subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC." *Brindley v. Target Corp.*, 761 F. Supp. 2d 801, 805 (N.D. Ill. 2011) (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). Honn alleges in her Complaint that she filed a timely charge of age discrimination with the EEOC (Compl. ¶97), but the only charge submitted is a charge that fails to mention any acts related to Honn's age.

Further, this Court is stumped as to the factual basis for Honn's age discrimination claim under the ADEA. Plaintiff's Complaint alleges she was over 40 and provided a

9

"resignation/settlement agreement" following her termination. (Compl., ¶¶s 95-98). Honn asserts that she was provided that agreement but not advised that she had the right to review it with a lawyer or that she had 21 days to withdraw her resignation – which are protections provided in the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. §626(f)(1).[4] But the OWBPA does not create a private cause of action for either age discrimination or age-related retaliation claims. *See Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019) (determining the plaintiff's OWBPA retaliation claim failed because "the OWBPA does not create a private cause of action"); *Jiggetts v. United Parcel Serv.*, 2017 WL 1164698, at *5 (S.D.N.Y. Mar. 27, 2017) ("[T]he OWBPA does not give rise to a cause of action separate from a violation of the ADEA"); *Grays v. SDH Educ. W., LCC*, 2017 WL 2240227, at *5 (S.D.N.Y. Mar. 23, 2017) ("OWBPA does not establish a cause of action for age discrimination"). So these cannot be the factual allegations upon which her ADEA claim lies.

That said, there is at least some authority that permits a plaintiff, even one who does not sign an agreement, to seek declaratory and injunctive relief. *Winters v. Fellowes, Inc.* 2005 WL 8177351 (Oct. 11, 2005) (a plaintiff who does not sign an OWBPA waiver may not file an independent cause of action for monetary damages but may seek declaratory and injunctive relief), But the declaratory and injunctive relief recognized by other courts is not at issue in this case. The declaratory and injunctive relief for a violation of the OWBPA generally relates to negating the validity of the waiver of an ADEA claim. *See Oberg v. Allied Van Lines, Ins.*, 11 F3d 679, 682 (7th Cir. 1993). Plaintiff currently seeks "an injunction against [DCS] from engaging in any

---

[4] In 1990, Congress amended the ADEA by passing the OWBPA. The OWBPA requires employers to provide specific information to older workers who are terminated as part of a group layoff and provides rules governing releases of ADEA claims. *See* 29 U.S.C. § 626(f) (providing that an individual may not waive any right under the ADEA unless the waiver is knowing and voluntary and listing requirements for a waiver to be knowing and voluntary). It does not appear Honn signed the agreement offered to her by DCS.

employment practice which retaliates against employees who complain about discrimination" (Compl. Prayer for Relief, ¶1). While the Plaintiff's Complaint seeks injunctive relief, this is not the sort of injunctive relief available under the OWBPA. Because the Court has found there are no factual allegations to support an ADEA claim, an amended complaint seeking to invalidate an ADEA waiver would be futile.

### b. Claims under Title VII

DCS next turns to the Title VII claims of discrimination and retaliation and argues that Plaintiff's complaint fails to state a claim for relief because none of the allegations assert that DCS discriminated or retaliated against Honn based on a protected characteristic. The Court agrees.

Under Seventh Circuit law, complaints "alleging illegal retaliation on account of protected conduct must provide some specific description of that conduct beyond the mere fact that it is protected." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (citation omitted). To constitute protected expression, the plaintiff's complaint to her employer must indicate that discrimination has "occurred because of sex, race, national origin, or some other protected class." *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (quotation marks and citation omitted).

Honn's complaint, and her corresponding Charge have alleged only that she complained about being forced to sign an audit with changes she didn't make and other issues surrounding her involvement with Pierceton Woods Academy. Seventh Circuit law holds, however, that "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Honn alleges neither that she specifically complained that she had been discriminated or retaliated against because of a protected

characteristic, nor do the proffered facts support such an inference that might render her discrimination and retaliation claims plausible. When an employee alleges retaliation, the law puts the burden on the employee to have given her employer some kind of notice that she was being discriminated against *because of* her protected characteristic or that she was opposing conduct prohibited by the relevant employment statute. *See Skiba v. Illinois Cent. Ry. Co.*, 884 F.3d 708, 718 (7th Cir. 2018); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006); *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727–28 (7th Cir. 2003). Honn has not done so. Accordingly, Honn's claims under Title VII for discrimination and retaliation must be dismissed for failure to state a claim.

However, the Court will permit Honn to amend her complaint to clarify her allegations and claims for Title VII discrimination and retaliation, if she believes she can do so within the confines of her Charge.[5] The Court emphasizes to Honn that she should be mindful that the scope of the EEOC Charge "limits the scope of subsequent civil proceedings in federal court," *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013).

## **CONCLUSION**

Based on the above, DCS' Motion to Dismiss (ECF No. 8) is GRANTED. Plaintiff is granted leave to file an amended complaint by March 18, 2025, if she chooses to do so. Failure to do so by the deadline will result in a final judgment being entered in this case.

SO ORDERED on March 4, 2025.

---

[5] Plaintiff makes a reference in her response brief to DCS violating the ADA by forcing plaintiff to miss medical appointments. (ECF No. 16, at 3: "both Honn and at least one other employee in the past have been asked to routinely miss medical appointments … these are employees who are over the age of forty (40) who are protected by the American[s] with Disabilities Act."). These claims were not asserted in the Charge nor does plaintiff plead facts supporting an ADA claim in the complaint. Thus, any attempt to assert an ADA claim flounders because of "the axiomatic rule that a plaintiff may not amend h[er] complaint in h[er] response brief*." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

                                         s/ *Holly A. Brady*
                                         CHIEF JUDGE HOLLY A. BRADY
                                         UNITED STATES DISTRICT COURT